IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE DENNIS,

                  Plaintiff,                          No. 06:14-cv-00822-HZ

       v.

CAROLYN W. COLVIN, Acting                   OPINION & ORDER
Commissioner of Social Security,

                  Defendant.

Richard F. McGinty
MCGINTY & BELCHER, ATTORNEYS
P.O. Box 12806
Salem, Oregon 97301

       Attorney for Plaintiff

Billy J. Williams
ACTING UNITED STATES ATTORNEY
District of Oregon
/ / /
/ / /

1 - OPINION & ORDER

Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

Jordan D. Goddard
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Valerie Dennis brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

    Plaintiff applied for SSI on November 19, 2010, alleging an onset date of November 15, 2006. Tr. 12, 169-74. Her application was denied initially and on reconsideration. Tr. 79, 93-96, 82-92.

    On October 25, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 29-62. On January 24, 2013, the ALJ found Plaintiff not disabled. Tr. 9-28. The Appeals Council denied review. Tr. 1-4.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on post-traumatic stress disorder, depression, history of learning disabilities, attention deficit disorder, anxiety, and history of self-harm. Tr. 184. At the

2 - OPINION & ORDER

time of the hearing, she was twenty-two years old. Tr. 34. She completed the eighth grade and attended some of ninth grade, participating in special education classes. Tr. 36-37, 48, 185. She also completed some of the requirements for a GED. Tr. 36-37. She has no past relevant work. Tr. 56. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

3 - OPINION & ORDER

acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since her application date.  Tr. 14.  Next, at step two, the ALJ determined that Plaintiff

has severe impairments of post-traumatic stress disorder, depression, generalized anxiety

disorder, attention deficit hyperactivity disorder (ADHD), intermittent explosive disorder,

learning disorder not otherwise specified, personality disorder, obesity, history of amphetamine

abuse, and asthma.  Id.  At step three, the ALJ concluded that Plaintiff's impairments did not

meet or equal, either singly or in combination, a listed impairment.  Tr. 14-15.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC)

to:

perform a full range of work at all exertional levels but with the following

nonexertional limitations:  she should not climb ladders, ropes, and scaffolds.  She should avoid concentrated exposure to respiratory irritants, such as dust and odors.  She would do best in an environment where the noise level is at a moderate level, such as a business office or department store, not in places using heavy equipment or with heavy traffic.  She would be able to remember, understand, and carry out instructions typical of occupations with an SVP of one or two.  She would do best working in an environment with no public interaction.  Passing someone from the public in [a] hallway is acceptable.  She can work in proximity with others, but not in a job that requires teamwork.  She should only be in a work situation with simple work-related decisions with few if any work place changes.  She would do best with occasional interaction with coworkers, where they do not work closely.  For example, a line within three feet of each other.  She would perform best where not isolated, but occasional interaction with coworkers maybe 15-20 minutes out of an hour.

Tr. 16.

With this RFC, the ALJ proceeded directly to step five given that Plaintiff has no past relevant work.  Tr. 23.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as routine officer helper and packing line work.  Id.  Thus, the ALJ determined that Plaintiff is not disabled.  Tr. 23-24.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff raises a single error by the ALJ.  She contends that while the ALJ purported to give great weight to the functional assessments of examining psychologist David M. Freed, Ph.D., the ALJ failed to include all of Dr. Freed's functional limitations in the RFC.  Thus, she argues, the hypothetical upon which the Vocational Expert (VE) testified was incomplete and the VE's testimony cannot provide substantial evidence for the ALJ's decision.  Valentine v. Comm'r, 574 F.3d 685, 690 (9th Cir. 2009) (hypothetical presented to the VE is derived from the RFC; to be valid, the hypothetical presented to the VE must incorporate all of a plaintiff's limitations); Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (an incomplete hypothetical cannot "constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert").

Dr. Freed examined Plaintiff in October 2012 and produced a narrative report dated November 1, 2012.  Tr. 451-58.  He noted Plaintiff's experience as a victim of repeated sexual abuse as a child and her history of behavioral and academic problems in childhood and adolescence.  Tr. 451.  In addition to reviewing the history of her present illness, her family, her education and work, substance abuse, and legal problems, as well as her medical and psychiatric history, Dr. Freed conducted a mental status examination and administered several psychological tests.  Tr. 451-54.

6 - OPINION & ORDER

Her performance on academic testing showed a word reading score which was somewhat higher than expected given her educational background. Tr. 455. However, her spelling subtest produced a result at the fifth-grade level. Id. She showed some impairment to immediate attention to verbal stimuli on attention-related testing. Id. During a word list memory test, she was asked to read a list of ten words, three times. Id. Her overall performance was in the mildly to moderately impaired range. Id. Other testing indicated that a diagnosis of ADHD was highly probable and that she fell in the severely depressed range. Id. Dr. Freed noted that Plaintiff was able to bathe, dress, eat, and toilet independently and that she denied having any problems with basic activities of daily living. Id.

Dr. Freed's diagnostic impressions were (1) post-traumatic stress disorder; (2) major depressive disorder, recurrent, severe; (3) generalized anxiety disorder; (4) intermittent explosive disorder; (5) attention deficit hyperactivity disorder, combined type; and (5) learning disorder NOS. Tr. 456. He also noted her past history of polysubstance abuse. Id. He rated her Global Assessment of Functioning (GAF) at 55. Id.

In addition to his narrative report, Dr. Freed completed a two-page "Functional Assessment of Work-Related Mental Activities." Tr. 459-60. The form defined "moderate" as being able to perform the designated task or function, but with noticeable difficulty "(distracted from job activity)," from eleven- to twenty-percent of the work day or work week, meaning more than one hour per day but less than one and one-half hours per day. Id. The form also contained rating categories of none, moderately severe, and severe. Id.

Dr. Freed assessed Plaintiff as moderately limited in the following functions: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain

attention and concentration for extended periods of time; (4) maintain regular attendance; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal work week without interruptions from psychologically based symptoms; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) maintain socially appropriate behavior; (11) travel in unfamiliar places or use public transportation; and (12) set realistic goals or make plans independent of others.  Tr. 459-60.

In her decision, the ALJ discussed Dr. Freed's report at some length.  Tr. 18-19, 21.  She expressly mentioned all of Dr. Freed's moderate limitations except the one finding Plaintiff moderately limited in the ability to set realistic goals or make plans independent of others.  Tr. 21.  The ALJ gave Dr. Freed's opinion "great weight because it is consistent with the record as a whole."  Id.  The ALJ continued:  "[The opinion] supports a finding [that] mental health symptoms have significantly affected the claimant's ability to perform basic work activities.  The [RFC] therefore contains appropriate restrictions and account[s] for such deficits."  Id.

Plaintiff argues that notwithstanding the ALJ's statement crediting Dr. Freed's opinion, the ALJ did not, in fact, credit some of Dr. Freed's limitations.  Plaintiff contends that the RFC fails to account for the following moderate limitations assessed by Dr. Freed:  (1) the ability to maintain attention and concentration for extended periods; (2) the ability to maintain regular attendance and complete a normal workweek without interruption from psychologically based symptoms; (3) the ability to accept instructions and respond appropriately to criticism by supervisors; and (4) the ability to work in close proximity to others, either because Plaintiff

would be distracted by others or because Plaintiff's behavior would distract others.

In response, Defendant argues that the ALJ's RFC accounted for all of the limitations assessed by Dr. Freed. Defendant suggests that the proper argument is not whether the ALJ "omitted" certain limitations from the RFC but whether the RFC is based on a rational interpretation of Dr. Freed's opinion and accounts for all of the limitations noted by Dr. Freed. Because the ALJ is responsible for interpreting the evidence and resolving ambiguities, the ALJ's conclusion must be upheld where the evidence is susceptible to more than one rational interpretation. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Additionally, Defendant notes, the ALJ's findings need only be consistent with a medical source's credible assessments, not necessarily identical to them. See Turner v. Comm'r, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (court found limitations in the RFC to be "entirely consistent" with medical source's limitations).

Defendant notes that the form completed by Dr. Freed defined "moderate" to mean some impairment. It did not suggest that Plaintiff had a complete inability to perform the particular skill or function. As such, Defendant argues, consistent with Dr. Freed's GAF score of 55 which indicates a moderate level of impairment, the RFC as a whole addresses all of the limitations assessed by Dr. Freed in the areas of auditory distractions, task complexity, social interaction, exercise of judgment, and workplace changes.

I agree with Defendant that the assessments by Dr. Freed do not show that Plaintiff is incapable of performing the skills or functions indicated. As noted, the definition of "moderate"

contained in the form indicates a certain degree of limitation, not a complete limitation. Thus, I reject Plaintiff's arguments that Dr. Freed opined that Plaintiff is precluded from performing a particular function. E.g., Pl.'s Brief at 8 ("Dr. Freed opined that Claimant would not be able to maintain attention and concentration for extended periods"); at 9 ("Dr. Freed opined that Claimant would not be able to maintain regular attendance"); at 9-10 ("Dr. Freed opined that Claimant would not be able to accept instructions and respond appropriately to supervisors"). And, I also agree that when the ALJ credits the functional limitations of a medical source, the RFC may not need to expressly incorporate each of those limitations if the RFC embraces and accounts for the limitations.

After initially discussing Dr. Freed's report, the ALJ specifically noted that the objective findings showed that Plaintiff's mental health conditions have affected her ability to concentrate, persist, and pace. Tr. 19. To accommodate this limitation, the ALJ limited Plaintiff to an environment where the noise level is moderate and to occupations with a specific vocational preparation (SVP) of one or two. Id. She also limited Plaintiff's work situations to those requiring only simple work-related decisions and few work place changes. Id.

An RFC restricting a claimant to simple tasks adequately captures moderate limitations in concentration, persistence and pace when it is consistent with the medical evidence. See Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008); Hamilton v. Astrue, No. 03:11-cv-06063-HU, 2012 WL 3314303, at *10 (D. Or. June 15, 2012) (limitation in the RFC to simple, routine tasks accounted for medical source's limitations in concentration and attention). A limitation to jobs with an SVP level of one or two is essentially a limitation to unskilled work. See Soc. Sec. Ruling 00-4p, available at 2000 WL 1898704, at * 3 (noting that unskilled work

corresponds to an SVP of 1-2). By addressing auditory distractions, decision-making and changes in the workplace, proximity to and interaction with others, and especially by indicating that Plaintiff's ability to remember, understand, and carry out instructions is limited to those jobs with a low SVP, the ALJ sufficiently addressed the attention and concentration limitation assessed by Dr. Freed. See Wells v. Colvin, No. 06:14-cv-00654-MC, 2015 WL 1492439, at *8 (D. Or. Apr. 1, 2015) (RFC which limited the plaintiff to unskilled work with SVP of 1 or 2, and instructed that she could tolerate no more than brief, superficial contact with the public and only occasional contact with co-workers and supervisors, sufficiently addressed a moderate limitation in concentration, persistence, and pace).

The ALJ's RFC also sufficiently addresses Dr. Freed's moderate limitations in regard to Plaintiff's ability to work in proximity to others. Plaintiff argues that the RFC fails to address the moderate "dual proximity" limitations in the ability to work in proximity to others without being distracted by them and in the ability to get along with coworkers or peers without distracting them. But, the RFC limits Plaintiff to no public interaction and further provides that while she can work in proximity with others, she cannot work as part of a team. The ALJ further limited her to only occasional interaction with coworkers and expressly stated she could not work closely with coworkers. The ALJ gave a specific example of being no closer than three feet and limited Plaintiff's contact with coworkers to a maximum of fifteen to twenty minutes per hour.

Again, it is important to remember that Dr. Freed's limitations were not at a severe or even moderately serious level. Instead, as mentioned previously, they indicate that Plaintiff is capable of performing the skill or function, but with limitations. The ALJ's RFC accounts for both proximity limitations by limiting Plaintiff's public interaction, distance and interaction with

11 - OPINION & ORDER

coworkers, and ability to be part of a team.  These limitations protect Plaintiff from being distracted and from being a distraction to others.

While the ALJ's RFC adequately captures the concentration, persistence, and pace limitation as well as the proximity limitations, I agree with Plaintiff that the RFC fails to capture the limitations in attendance and completing a normal workweek and the limitation in the ability to respond appropriately to supervision.  Defendant argues that the RFC's restrictions on workplace noise levels, instruction complexity, and decision making account for Plaintiff's limitation in completing a normal workweek.  Defendant's argument fails to address the limitation regarding maintaining regular work attendance.  Furthermore, Defendant fails to explain why these particular restrictions account for Plaintiff's ability to regularly attend work or complete a normal workweek.  While a set of restrictions addressed to specific limitations such as concentration and attention, proximity to others, interaction with coworkers, and simple, unskilled work, could encompass a more general restriction on attendance, it is unclear if the ALJ in this case so intended.

The ALJ notes all but one of Dr. Freed's moderate limitations, including those related to attendance and the ability to complete a normal workweek.  Tr. 21.  The ALJ also states that Dr. Freed's opinion is consistent with the record as a whole and supports a finding that mental health symptoms have significantly affected Plaintiff's ability to perform basic work activities.  Id.  She further states that therefore, the RFC "contains appropriate restrictions" and accounts for "such deficits."  Id.  The ALJ's reference to Plaintiff's ability to perform basic work activities is ambiguous because it fails to acknowledge attendance-related issues.  By using the phrase "basic work activities," it is unclear if the ALJ meant to address only the performance of the actual

work-related tasks or whether she also addressed all work-related limitations including

attendance and the ability to complete a normal workweek.

The rest of the ALJ's decision is unilluminating.  Other than the listing of Dr. Freed's

moderate limitations, the ALJ does not mention or discuss attendance-related issues at any point

in her decision.  Instead, she notes that Dr. Freed's objective findings reveal mental health

conditions that have primarily affected Plaintiff's ability to socialize appropriately and

concentrate, persist, and pace.  Tr. 19.  This suggests that the ALJ either intended the specific

restrictions to account for the attendance-related limitations, or that the ALJ impliedly rejected

the attendance-related restrictions even though she professed to adopt all of Dr. Freed's

limitations.  Because the ALJ's decision itself is unclear, I cannot accept Defendant's position that

the ALJ's interpretation of the evidence is rational and that the RFC's limitations in noise levels,

instruction complexity, and decision making account for the limitations in attendance and the

ability to complete a normal workweek.

Finally, as to the limitation on interacting with supervisors, Defendant argues that the

RFC's limitation to exclude jobs that require teamwork sufficiently accounted for the moderate

limitation in dealing with supervisors.  I disagree.  In a 2013 case, the Eastern District of

California rejected the Commissioner's argument that the RFC's limitation to occasional public

contact captured the assessment by a credited medical source of a moderate limitation in

interactions with coworkers and supervisors.  Gentry v. Colvin, No. 1:12-cv-01825-SKO, 2013

WL 6185170, at *14-16 (E.D. Cal. Nov. 26, 2013).  The court explained that unlike some

functional limitations, a limitation on the ability to interact with supervisors and co-workers "is

conducive to the formulation of a concrete restriction in the RFC in the same way the ALJ

created a restriction in the RFC accounting for Plaintiff's limited ability to have contact with the public." Id. at *16.  Thus, there was no basis for asserting that other limitations in the RFC captured the coworker and supervisor limitations.  Id.  The court also noted that in contrast to cases where a limitation bears a "logical nexus" to another limitation, such as the "logical nexus" between a limitation to simple, repetitive tasks in the RFC to the functional limitation assessed by a medical source regarding impairment in concentration, persistence, and pace, the limitations in the RFC, including the limitation on public contact, bore no nexus to the ability to have contact with coworkers and supervisors.  Id.  Thus, the court concluded that the ALJ erred and remanded for the ALJ either to set forth reasons why that portion of the medical source's opinion was rejected or to include the limitations in the plaintiff's RFC and solicit testimony from a VE regarding whether an individual with such limitations could perform work available in the economy.  Id.

Other courts have reached similar conclusions regarding an RFC's omission of a limitation regarding supervisors.  See, e.g., Hann v. Colvin, No. 12-cv-06234-JCS, 2014 WL 1382063, at *22 (N.D. Cal. Mar. 28, 2014) (although ALJ gave great weight to medical source's opinion, including opinion that the claimant had moderate deficits in her ability to interact effectively with the public, coworkers, and supervisors, the RFC provided a limitation addressing only occasional contact with the public and coworkers with no mention of supervisors; court held that because the opinion "applied to all three of these categories of people—and this opinion was concrete, not requiring 'translation'—the ALJ should have included it as a limitation in her RFC"); Kehn v. Colvin, No. 12–cv–0399–JPH, 2013 WL 6195715, at *9 (E.D. Wash. Nov. 27, 2013) (ALJ erred by omitting restriction on supervisor interaction with supervisors from RFC);

14 - OPINION & ORDER

Sackett v. Colvin No. C12–5353–TSZ–JPD, 2013 WL 1966156, at *7–8 (W.D. Wash. Apr. 9, 2013) (although ALJ credited physician's opinion, RFC omitted physician's limitation on interactions with coworkers and supervisors; court rejected Commissioner's argument that the limitation was captured by restrictions on repetitive tasks, visual instruction, and superficial and occasional contact with the public; court noted that limitation to four-step tasks was related to difficulties learning new tasks, and was not relevant to a limitation to contact with coworkers and supervisors which should have been included in the RFC separately).

I agree with these decisions. When the ALJ credits the opinion of a medical source which includes the limitation on the ability to interact appropriately with supervisors, the omission of this specific, concrete limitation in the RFC is error because it is a limitation not requiring "capturing" or "translation" and limitations on interactions with the public or coworkers do not address the separate dynamic created by the supervisory relationship. Thus, the ALJ erred by failing to include a supervisory-related limitation in the RFC.

Alternatively, Defendant argues that any errors by the ALJ are harmless. Although the Hann court reached the conclusion that the omission of a supervisory restriction was harmless, Hann, 2014 WL 1382063, at *23-23, I decline to follow that reasoning. First, Defendant argues that any errors are harmless because "more likely than not" the error would not affect the ultimate disability determination. Def.'s Brief at 9. The specific argument Defendant makes is that "[i]f this Court dictates a definition of the word 'moderate' when interpreting Dr. Freed's opinion that effectively precludes competitive employment, it is most likely that an ALJ will simply reject Dr. Freed's opinion on remand." Id. at 9-10. It is clear from my Opinion, however, that I am not so interpreting Dr. Freed's opinion and my conclusions regarding the ALJ's errors are much

narrower than Defendant suggests.

Second, <u>Hann</u>'s harmless error discussion was limited to an error regarding supervisory restrictions.  Here, as previously explained, the ALJ's opinion regarding the limitations on attendance and the ability to complete a normal workweek need clarification.  Therefore, <u>Hann</u> is distinguishable.  Third, in my opinion, the <u>Hann</u> court's characterization of the omission of a supervisory restriction as a "small error" fails to recognize the unique relationship of a supervisor to an employee and thus relies on an unsupportable assumption about the significance of the error.  Accordingly, I decline to conclude that the ALJ's error here is harmless.

Plaintiff seeks a remand for a determination of benefits, arguing that when all of the functional limitations in Dr. Freed's opinion are credited, no outstanding issues remain and the record establishes that Plaintiff is disabled.  In social security cases, remands may be for additional proceedings or for an award of benefits.  <u>E.g.</u>, <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test.  <u>Id.</u> at 1020; <u>see also</u> <u>Treicher v. Comm'r</u>, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.  <u>Garrison</u>, 759 F.3d at 1020.  Second, the record must be fully developed and further administrative proceedings would serve no useful purpose.  <u>Id.</u>  Third, if the case is remanded and the improperly discredited evidence is credited as true, the

16 - OPINION & ORDER

ALJ would be required to find the claimant disabled. Id. To remand for an award of benefits, each part must be satisfied. Id.

The "ordinary remand rule" is "the proper course" except in rare circumstances. Treicher, 775 F.3d at 1101. I agree with Defendant that remand for additional proceedings is the proper course in this case. First, I do not view the ALJ as having improperly rejected certain testimony. Instead, the ALJ's opinion is ambiguous as to the attendance-related restrictions and omits the limitation on interaction with supervisors. Because the ALJ gave Dr. Freed's opinion great weight, she did not reject it but failed to adequately address all of Dr. Freed's limitations in the RFC. I do not view this as satisfying the first element of the remand test.

Second, even if the ALJ's errors are interpreted to be an improper rejection of Dr. Freed's opinion, the record is not fully developed. Plaintiff cites to the VE's testimony in response to questioning by Plaintiff's counsel that a person who misses sixteen hours of work per month cannot sustain competitive employment. Tr. 59. Plaintiff argues that this rate of absenteeism is consistent with Dr. Freed's assessment that Plaintiff would miss ten- to twenty-percent of a regular workweek. I disagree. Plaintiff's argument presumes that the moderate limitation on Plaintiff's ability to complete a normal workweek as assessed by Dr. Freed is not impacted by the other limitations in the RFC. But, without a discussion of the issue by the ALJ in the first instance, the record regarding the attendance-related limitations is not fully developed. Accordingly, remand for additional proceedings is appropriate.

/ / /

/ / /

/ / /

17 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is reversed and the case is remanded for additional

proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015

Marco A. Hernandez
United States District Judge

18 - OPINION & ORDER